PER CURIAM.
Upon a complaint by The Florida Bar this Court appointed a referee to evaluate allegations of respondent D. Richard Holmes’ misconduct. Holmes tendered an unconditional plea of guilty for consent judgment covering all charges pursuant to article XI, Rule 11.13(6)(b) of the Integration Rule of The Florida Bar, and upon consideration of the pleadings and evidence the referee has recommended that Holmes be found guilty in accordance with his plea and disbarred.
The referee based her recommendations as to guilt and punishment on the following findings of fact as to the three counts lodged against Holmes by The Florida Bar. The first count involved respondent’s dealings as the purchaser of a home from Harvey and Marla Garod. In December 1983 respondent and the Garods began negotiating the sale, and respondent informed the sellers that he would require two months to arrange his finances for the purchase. Consequently, the parties executed the following February a written contract to sell and purchase the home on April 1, 1984. The Garods had, beginning with the negotiations, made known to respondent that they intended to relocate in New Hampshire and needed the funds from the home’s sale to do so.
Between February and mid-April of 1984 respondent represented to the Garods that he had made application for financing and that he had been informed by the bank that the loan approval was certain and imminent. When respondent indicated to the Garods that the lending institution was slow in processing the loan, and asked for an extension of the closing date, the Gar-ods agreed to extend the closing date to mid-April of 1984. Respondent assured the Garods that the closing would then take place, and encouraged them to contract to purchase a home in New Hampshire. They did so.
At the appointed date, respondent represented that the bank had failed to process the loan, and sought another two week delay. He then refused to return the Gar- *1245 od’s telephone calls, and when cornered continued to represent that the bank was “dragging its feet.” On May 25, 1984, the Garods contacted the bank and discovered that in fact respondent had made no effort to obtain any financing. Respondent then informed the Garods that he had applied for the loan but had not pursued it because he had obtained private financing. He had not, and a month later informed the Garods that the private financing had fallen through. Upon finally applying for the loan in June of 1984, respondent failed and refused to either submit the necessary documentation or communicate with the lending officials despite their repeated inquiries.
The second count involved respondent’s dealings with client Jeanette Goff. In September 1983, he agreed to purchase her residence and purported to represent her in the transaction. Ms. Goff, unfortunately, expected respondent to exercise his professional judgment on her behalf. He never disclosed to her the conflict of interest presented by the situation.
Respondent secured from a bank a $41,-250 purchase money mortgage loan in connection with the purchase of the residence. After dissuading his client from attending the closing by assuring her that her interests would be safeguarded, he attended the closing alone. At the closing, he received $19,401.29 in net proceeds from the $41,250 loan. He deposited the net proceeds to his client’s trust account in March of 1984. Within a week he had expended the entire sum by issuing ten checks of various amounts, including two to his own order of $2,000 and $3,088.34.
Despite the fact that the contract called for the full payment of the $55,000 purchase price upon closing, respondent advised his client to accept the purchase price shortfall of $15,418.50 (including the $5,083.34 he had misappropriated) in the form of an unsecured promissory note. Although the closing took place in March 1984, respondent refused to render an accounting of the closing to his client until May 4, 1984, despite her repeated requests. He later failed and refused to pay the unsecured promissory note, forcing Ms. Goff to sue him in order to collect her due under the note.
Around the time of this litigation, respondent represented Ms. Goff as the personal representative in the administration of the estate of one Geneva Hupp. After the commencement of the promissory note litigation, respondent, in an effort to set off that claim, made application for an award of legal fees for alleged extraordinary legal services rendered by him in his representation of Ms. Goff as personal representative of the estate. The probate court, in denying such application, specifically found that “the testimony indicated that attorney Holmes did not, in fact, file several of the pleadings that he listed to justify his fees for extraordinary service.”
Finally, the referee’s findings as to the third count involved respondent’s misrepresentation of a number of clients. First, respondent arranged to represent both the buyers and seller of a plot of land, and prepared a contract which the parties executed in May of 1983. Between May and November, the sellers entrusted to respondent sums totalling $185,000, the purchase price set forth in the contract, as well as $1,000 for attorney’s fees, $680 for a survey and an additional $300 for “unspecified closing costs.” Respondent failed to deposit the $980 entrusted to him for survey and other closing costs to a trust account. He additionally appropriated to his own purposes the sum of $61,700 from the $185,000 purchase price with which he had been entrusted, refusing to account to either party for the amount. Respondent subsequently misrepresented to both buyer and seller the extent of a bond issue with which the property was burdened.
In another case, in which respondent agreed to administer an estate on behalf of a client, he came into possession of estate assets in the form of certificates of deposit totalling $21,200. Of that sum, respondent appropriated to his own use $16,200 and refused to either deliver or account for this amount. In yet another case, respondent accepted legal fees of $1,500 in order to represent a client in a claim against the *1246 IRS. He then let lapse the statute of limitations, precluding the client’s recovery of a $10,000 claim of refund. Respondent similarly failed to prosecute a number of other claims.
Based on these findings, the referee made the following recommendations as to respondent’s guilt:
AS TO COUNT I
I recommend that respondent be found guilty of violating Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility which prohibits conduct by an attorney constituting dishonesty, fraud, deceit or misrepresentation.
AS TO COUNT II
I recommend that respondent be found guilty of violating the following rules:
Disciplinary Rule 5-104(A) of the Code of Professional Responsibility which provides that a lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client.
Disciplinary Rules 9-102(B)(l), Disciplinary Rule 9-102(B)(3) and Disciplinary Rule 9-102(B)(4) of the Code of Professional Responsibility which provides that an attorney shall promptly notify a client of the receipt of client funds, render appropriate accounts to his client regarding such funds and promptly pay to the client as requested by the client such funds in the possession of the attorney which the client is entitled to receive.
Integration Rule 11.02(4) which provides that money entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose; a refusal to account for and deliver over clients’ money upon demand shall be deemed a conversion.
Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility which proscribes conduct by an attorney constituting dishonesty, fraud, deceit or misrepresentation.
Disciplinary Rule 1-102(A)(5) of the Code of Professional Responsibility which provides that an attorney shall not engage in conduct that is prejudicial to the administration of justice.
Disciplinary Rule 1-102(A)(6) which provides that an attorney shall not engage in conduct which adversely reflects on his fitness to practice law.
AS TO COUNT III
I recommend that respondent be found guilty of violating the following rules:
Disciplinary Rule 9-102(A) of the Code of Professional Responsibility which provides that all client funds paid to a lawyer shall be deposited in one or more identifiable bank or savings and loan association accounts and no funds belonging to the lawyer shall be deposited therein.
Integration Rule 11.02(4) which provides that money entrusted to an attorney for a specific purpose is held in trust and must be applied only to that purpose and refusal to account for and deliver such money upon demand shall be deemed a conversion.
Disciplinary Rule 9-102(B)(3) and Disciplinary Rule 9-102(B)(4) of the Code of Professional Responsibility which provide that a lawyer shall render appropriate accounts to his client regarding funds paid to such lawyer by a client and promptly pay to the client as requested by such client the funds in possession of the lawyer which the client is entitled to receive.
Integration Rule 11.02(3)(a) which proscribes conduct by an attorney contrary to honesty, justice and good morals.
Disciplinary Rule 1-102(A)(4) of the Code of Professional Responsibility which proscribes conduct by an attorney constituting dishonesty, fraud, deceit or misrepresentation.
Disciplinary Rule 6-101(A)(3) of the Code of Professional Responsibility *1247 which provides that an attorney shall not neglect a legal matter entrusted to him.
Disciplinary Rule 7-101(A)(2) of the Code of Professional Responsibility which provides that an attorney shall not intentionally fail to carry out a contract of employment entered into with a client for professional services.
Disciplinary Rule 7-101(A)(3) of the Code of Professional Responsibility which provides that an attorney shall not intentionally prejudice or damage his client during the course of his professional relationship.
Disciplinary Rule 1-102(A)(6) of the Code of Professional Responsibility which provides that an attorney shall not engage in conduct that adversely reflects on his fitness to practice law.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
We therefore disbar respondent D. Richard Holmes and direct that his name be immediately stricken from the roll of attorneys permitted to practice law in this state. Judgment for costs in tlie amount of $4,799.78 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
McDonald, C.J., and ADKINS, BOYD, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
ORDER ON MOTION FOR CLARIFICATION
The Florida Bar requests this Court to clarify its opinion dated January 5,1987, by indicating whether the disbarment therein ordered is governed by Florida Bar Integration Rule, article XI, Rule 11.10(5), which provides for a three-year minimum disbarment period, or whether it is governed by Rule 3-5.1(f), Rules of Discipline, effective January 1, 1987, which provides for a five-year minimum disbarment period. We find, in view of the Bar’s representations at the time of respondent’s plea that the three-year minimum contained in Florida Bar Integration Rule, article XI, Rule 11.10(5), applies.
It is so ordered.